**ALOE CREME LABORATORIES, INC.,**
**Plaintiff-Appellant,**

v.

**MILSAN, INC., et al., Defendants-**
**Appellees.**

**No. 27791.**

United States Court of Appeals,
Fifth Circuit.

March 9, 1970.

Rehearing Denied April 24, 1970.

Certiorari Denied May 25, 1970.
See 90 S.Ct. 1818.

James R. McKnight (Lead Counsel), Chicago, Ill., Robert E. Ziegler, Fort Lauderdale, Fla., for appellant.

Richard Kanner, Aaron M. Kanner, Miami, Fla., for appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

This trademark case involves the commercial exploitation of the "beauty secret of the Nile"—the aloe vera plant. We must decide whether appellant has earned an advantage in presenting the panacea of Egyptian royalty to the American housewife. Aloe Creme Laboratories, Inc., brought suit in the United States District Court for the Southern District of Florida alleging infringement of its registered trademarks and unfair competition by appellee, Milsan, Inc.[1] As a part of its judgment,[2] the district court found the term "Alo," as used in appellant's trademarks, was descriptive of its products and without a secondary meaning. Appellant contends that the court's finding with respect to secondary meaning is clearly erroneous. We affirm.

Our review of the record indicates that appellant, apart from its claim of secondary meaning, sought relief in the district court under the common law doctrine historically known as palming off.[3] This is another species of protection from unfair competition. Inasmuch as appellant's notice of appeal strictly limited the portion of the judgment of which

---

1. Jurisdiction was alleged under 15 U.S.C. § 1121, as a case arising under the trademark laws of the United States.

2. The court found Milsan guilty of certain acts of infringement and unfair competition, from which there is no appeal. See discussion, *infra*.

3. Appellant's complaint alleged:
   14. Defendants' use of the said trademarks on their products is designed to sustain the illusion that defendants are in some way connected with plaintiff so as to enable defendants or its dealers or stores to palm off said products as and for those of plaintiffs. * * *
   The pre-trial stipulation contained a list of factual issues remaining to be resolved at trial including:
   (i) Whether defendant's uses of the trademarks ALOE VITA, ALOE MAG-IC, OIL OF ALOE, LOTIONS OF ALOE, ALOES OF ALOE, ALOE-SETTE, POWDERS OF ALOE, TANS OF ALOE and TAN PRESERVER WITH ALOE VITA, and the Design of Plant on its products are designed to sustain the illusion that defendant is in some way connected with plaintiff, so as to enable defendant or its dealers or stores to palm off said products as and for those of said plaintiff and have caused damage to said plaintiff and injury to the trade and purchasing public.
   In ruling on the case, the district court answered the questions posed in the stipulation. Except as to Milsan's use of the "Design of Plant" mark and its presentation of its TANS OF ALOE and TAN PRESERVER products, the court answered question (i) in the negative.

review was sought,[4] we do not consider the district court's determinations regarding palming off to be properly before us.[5]

In 1953, appellant, a Florida corporation with its principal place of business in Ft. Lauderdale, Florida, began selling products containing gel of the aloe vera plant. The medicinal properties of this tropical plant have been known since ancient times,[6] but, until recently, the rapid deterioration of the extracted gel had limited its use to areas where the plant is endemic. Appellant was able successfully to market aloe products through its development of a stablized aloe gel with a commercially acceptable shelf life.

The first of these products was an ointment for the treatment of burns originally sold under the name ALO-CREME OINTMENT. In 1957, appellant introduced its first cosmetics under the trademarks ALO-CREME FACE, ALO-CREME HANDS, and ALO-CREME BODY. In 1963, these names were abbreviated to ALO-OINTMENT, ALO-FACE, ALO-HANDS, and ALO-BODY respectively. Since 1963, appellant has used the following trademarks on its expanded line of products: ALO-PLUS, TRAVEL-ALO, ALO-RELIEF, ALO-and Design, ALO-MOISTURE PLUS, ALO-V SKIN CLEANSER, ALO-BEAUTY MATTE, ALO-TONE, ALO-ROUGE, ALO-LIPSTICK, ALO-POUDRE, ALO-V SHAMPOO, ALO-COSMETICS, ALO-CABANA SET, ALO-LEGS, Design of Plant,[7] QUEEN NEFERTITI, FASHION TAN and AFTER TAN [8] "ALO" products have enjoyed nationwide sales of approximately $12,000,000.

Milsan, Inc. is a Florida corporation with its principal place of business in Hialeah, Florida. Hyman Greenglass and his wife, Mildred, also appellees, are the only stockholders and executive officers of Milsan. The same corporation, under the name of Green's Discount Stores, formerly operated a discount drug store in Miami Beach, Florida. In 1964–65 this store sold various of appellant's products.

In 1965, Milsan began marketing cosmetics containing a solution of aloe powder. Milsan's trademarks include: TANS OF ALOE, TAN PRESERVER, LOTIONS OF ALOE, OIL OF ALOE, ALOES OF ALOE, ALOE MAGIC, ALOESETTE, POWDERS OF ALOE, ALOE FACE CREAM, ALOE VITA, and SANDRA LEE. Its products are sold chiefly in grocery and discount drugs stores at prices substantially less than appellant's comparable products.

---

4. Appellant's notice of appeal states:
   * * * plaintiff herein, appeals * * *, *only* from that portion of Paragraph 1 of the Judgment * * * reading as follows:
   "1. Plaintiff has not acquired secondary meaning in either 'Alo' or 'Aloe', and plaintiff's trademarks have not been infringed by defendant's use of 'Alo' or 'Aloe'." (Emphasis supplied.)
   It should also be noted that appellant drafted the final judgment from which the quotation is taken.

5. We consider the disposition of the claim for palming off to be independent of the claims of secondary meaning and trademark infringement inasmuch as they involve different elements of proof. *See* Nolan v. Coating Specialists, Inc., 422 F.2d 377 (1970) [No. 28388, Jan. 29, 1970]; Martin v. Atlantic Coast Line R. R. Co., 289 F.2d 414, 417 n. 5 (5th Cir.

1961). *See generally* 9 J. Moore, Federal Practice § 73.14, at 3221 (2d ed. 1953).

6. There are records of the plant's use in ancient Egypt, classical Greece, and 8th century China, as well as references in the Bible. It is recorded that the body of Jesus was annointed with Aloes. John 19:39–40. The plant was historically used to treat burns and skin irritation, and taken internally for a variety of ailments.

7. This design is depicted in Registration No. 811,159 and is a stylized representation of the Aloe Vera Plant.

8. Appellant has eighteen registrations for its trademarks issued by the U. S. Patent Office. In order to obtain registration of trademarks containing the term "Alo", appellant disclaimed the term, though expressly reserving its common law rights

On November 30, 1965, appellant, through its counsel, sent Milsan an infringement notice. Milsan admits receipt of the notice, but did not reply or in any way alter its activities. Appellant initiated the present actions on April 5, 1966, claiming trademark infringement and unfair competition.

The case was tried without a jury. The court found appellant's registered "Design of Plant" mark valid and infringed by the use of a similar mark on Milsan's products. Accordingly, this practice was enjoined. The court also found Milsan's TANS OF ALOE and TAN PRESERVER confusingly similar to appellant's FASHION TAN and AFTER TAN by reason of their overall appearance. The Milsan products were the same color and were sold in bottles similar to those used by appellant. The court criticized the script used on the labels of these products and the disproportionately small depiction of the trademark SANDRA LEE in relation to other elements of the labels. Milsan was ordered to remedy these sources of confusion. The court found that Milsan deliberately and willfully committed the above acts of trademark infringement and unfair competition in an effort to pass off its products as those of appellant. Milsan has not appealed from these adverse portions of the judgment.

■ In seeking to enjoin Milsan's use of "Aloe" as a portion of its trademarks, appellant contended that "Alo," whose original or *primary* meaning is descriptive, had acquired through use a *secondary* meaning indicating the goods of Aloe Creme Laboratories, Inc.[9] The court found that "Alo" was solely descriptive and without secondary meaning that would support relief. Appellant would have us characterize this evaluation of the evidence as clearly erroneous.

■■ Considered today as a part of the broader law of unfair competition, the doctrine of secondary meaning is another avenue to protection of trade names independent of any trademark act. The doctrine has been accounted as the response of the common law to the realities of business life.[10] Apparently entrepreneurs can not resist the temptation to tie the name of their product to some disabling quality of description, geography, or vanity.[11] While this foible prevents recourse to the Act,[12] in a proper case the law will recognize the years of effort and expense, necessary to effect a turn of the public mind, with equivalent protection. Once secondary meaning is established, the beneficiary need only show a likelihood of confusion to enjoin an infringing use.

■ Appellant contends that its promotion of the "Alo" family of marks has created such a secondary meaning. Milsan insists that the term is incapable of acquiring secondary meaning because it is generically descriptive of appellant's products. Milsan's argument is erroneous.[13] The doctrine of secondary mean-

9. The terms, primary and secondary, may be somewhat misleading since a secondary meaning entitled to protection must have become the *primary* meaning to the consumer. The problem may be avoided by thinking of the terms merely as temporal designations. 3 R. Callmann, Unfair Competition Trademarks and Monopolies § 77.1, at 338–340 (3d ed. 1969).

10. *See generally* 3 R. Callmann, supra note 9, § 77.1.

11. 15 U.S.C. § 1052 disqualifies certain kinds of marks from registration under the Lanham Act including one that:
(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misde-

scriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, * * * or (3) is primarily merely a surname.
As stated in note 8 *supra*, registration of the "Alo" marks was obtained by means of a disclaimer which is authorized by 15 U.S.C. § 1056.

12. The Lanham Act, 15 U.S.C. § 1051 *et seq.*

13. Secondary meaning is an absolute concept; it converts a word originally incapable of serving as a mark into a full fledged trademark. * * * The strength or weakness of such a mark depends exclusively upon the vitality of its secondary

ing is primarily concerned with descriptive marks and marks unregisterable for other reasons enumerated in the Act.[14] The determination that "Alo" is descriptive is only effective to prevent recourse to the Act and does not simultaneously foreclose recourse to the doctrine of secondary meaning.

A similar, though more sophisticated, argument is embodied in American Aloe Corp. v. Aloe Creme Laboratories, Inc.[15] There the Seventh Circuit reversed a finding by the district court that the "Alo" trade-name had acquired a secondary meaning entitled to protection. While we reach a result similar to our brethren of the Seventh Circuit, we do so for somewhat different reasons.

In its opinion, the American Aloe court sought to bring some order to the perplexing array of secondary meaning cases, by classifying them according to the relationship between the term claimed and the article to which it was applied. The court created a category, which it called denominative, to distinguish certain cases from those involving the general run of descriptive marks. The category neatly encompasses a group of cases where the mark claimed was the common name of the article.[16] In these cases, the uniform refusals of the courts to find secondary meaning are supported by a valid policy consideration. This policy consideration is grounded upon the fact that the recognition of property rights in the common name of an article could be tantamount to granting a monopoly in that commodity.

The Seventh Circuit, however, expanded its denominative category to include a group of cases involving marks that were descriptive because they referred to an ingredient of the product involved.[17] The policy in the former instance, just mentioned above, appears less persuasive in this situation. The "ingredient" cases reach different results, and must be reconciled on the basis of factual distinctions. Their inclusion tends to diminish the homogeneity of the denominative category.

Moreover, denomination appears to be a new damnation for aspiring trademarks. By placing "Alo" in this category, the court denied secondary meaning without the necessity of discussing any evidence relevant to the claim. We do not believe the present case can be resolved by the application of an appropriate epithet—be it generic description or denomination.[18]

■ A claim of secondary meaning presents a question of fact.[19] The chief inquiry is the attitude of the consumer toward the mark; does it denote to him a, "single thing coming from a single source"?[20] Short of a survey, this is difficult of direct proof. The record of the

meaning; to characterize such a mark as descriptive or geographical is error, for even the most famous marks would then be weak. 3 R. Callmann, *supra* note 9 at 340–341.

14. 15 U.S.C. § 1052(e), see note 11 *supra*.

15. 420 F.2d 1248 (7th Cir. 1970), [No. 17250, Jan. 9, 1970], rev'g 291 F.Supp. 645 (N.D.Ill.1968).

16. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (shredded wheat); Henry Heide, Inc. v. George Ziegler Co., 354 F.2d 574 (7th Cir. 1965) (Ju-Jubes); Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 343 F.2d 655 (7th Cir. 1965) (yo-yos).

17. Compare LeBlume Import Co. v. Coty, 293 F. 344 (2d Cir. 1923) (L'Origan-for perfume); Pinaud, Inc. v. Huebscham, 27 F.2d 531 (E.D.N.Y.1928) (Lilas De France-for perfume); Wells & Richardson Co. v. Siegel, Cooper & Co., 106 F. 77 (N.D.Ill.1900) (Celery Compound) with Dixi-Cola Laboratories, Inc. v. Coca-Cola Co., 117 F.2d 352 (4th Cir. 1941) (cola-for soft drink).

18. See note 13 *supra*.

19. Speed Products Co. v. Tinnerman Products, Inc., 222 F.2d 61, 66 (2d Cir. 1955); Little Tavern Shops, Inc. v. Davis, 116 F.2d 903, 906 (4th Cir. 1941).

20. Coca-Cola Co. v. Koke Co., 254 U.S. 143, 146, 41 S.Ct. 113, 65 L.Ed. 189 (1920).

case presently before the court contains considerable evidence by which appellant sought to inferentially establish the public mind.

Since 1953, appellant has continuously used "Alo" as a part of the trademarks of its products. In this period, it has gradually won a nationwide market among the discriminating consumers of cosmetics. The value and quality of appellant's products and the success of its business have been recognized by independent writers in newpaper and magazine articles exhibited to the district court. These articles designated the Florida-based corporation as the single source of "Alo" cosmetics.

Appellant has expended almost $3,000,000 in an effort to place the word "Alo" on the lips of every prospective female customer in the American market place. Its advertisements have appeared in such national publications as "Harper's Bazaar," "Beauty Fashion", and "Vogue". It engages in newspaper advertisement throughout the country in cooperation with local retail establishments. Local dealers also cooperate in displays and promotions within their stores, including demonstrations of "Alo" products conducted by appellant's staff of beauty consultants. In considering this evidence, it must be remembered that the question is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of "Alo" to the consuming public.[21]

The most direct evidence of the attitude of consumers came from eight witnesses, connected with different establishments selling appellant's products at retail. They shared the opinion that "Alo" meant appellant's products, and testified that their customers intended appellant's products when they asked for "Alo". However, only one of these witnesses worked in a store which sold both Milsan's and appellant's cosmetics. The remaining seven witnesses handled only the aloe products sold by appellant. The district court attached more significance to the testimony of the one witness with experience in selling both products.[22] It concluded that the consumer in asking for aloe was seeking a general class of cosmetics and not appellant's particular goods.

■■ We agree with *American Aloe* insofar as it holds that the evidentiary burden, necessary to establish secondary meaning, is substantial where the mark applied to an article designates a principal ingredient desired by the public. After reviewing the evidence in this regard, we can not say that the district court was clearly erroneous[23] in finding appellant's showing insufficient.

Accordingly, the judgment is affirmed.

---

21. *See* Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 194 F.2d 416 (2d Cir. 1952) ; *See generally* 3 R. Callmann, *supra* note 9, § 77.3.

22. This witness was Mrs. Frieda Geisler, an employee of Wollco Department Store in Ft. Lauderdale, Florida. Her testimony includes the following:
BY THE COURT:

Q If somebody came into your store and asked you for some aloe cream what do you say?
A We have to say which aloe cream are you interested in. Are you interested in the Aloe Creme Laboratories cream of Fort Lauderdale, the cosmetics, or in the Sandra Lee's cosmetics?

23. Rule 52(a), Fed.R.Civ.Proc.