**VOLKSWAGENWERK AKTIENGESELL-SCHAFT, Plaintiff-Appellee,**

v.

**Edward T. RICKARD, and Bessie Rickard, Individually, etc., Defendants-Appellants,**

No. 72-3186.

United States Court of Appeals, Fifth Circuit.

April 10, 1974.

Partial Rehearing Denied June 12, 1974.

Herbert H. Landau, Peter S. Chamberlain, Dallas, Tex., for defendants-appellants.

Fletcher L. Yarbrough, Dallas, Tex., Judith S. Scheier, New York City, for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Defendants-appellants seek review of an adverse judgment and injunction pursuant thereto. Volkswagenwerk Aktiengesellschaft (VWAG) sued Rickard, who does business as "The Bug Shop", for trademark and service mark infringement and unfair competition, seeking only injunctive relief. We approve the findings of the district court as amply supported by the record, and affirm with slight modification the injunctive decree based thereon.

The facts, neither complicated nor in substantial dispute, require only condensed recital. Rickard, with prior experience in both car repair and advertising, opened "The Bug Shop" in Dallas, Texas in 1967. He specialized in service work for Volkswagen (VW) autos. He was not then and has never been affiliated with VWAG, its wholly owned subsidiary Volkswagen of America (VWoA), or any authorized dealer-franchisee of VWoA. His admitted objective was to secure a foothold in the "after-market", that portion of the automobile business comprising the servicing and repair of cars sold by authorized VW dealers.

Rickard pursued this objective by doing extensive advertising in and around the Dallas area. His principal methods of communication with the VW owning public were newspaper ads, display ads in the telephone directory yellow pages, and direct mailing of advertising literature. This advertising concerned only one type of automobile, the VW, though Rickard testified at trial that he intended later to branch out into the service of other foreign cars. Based upon his past experience Rickard designed most of his own advertising copy. This promotional material and some of the display advertising signs at his place of business utilized five different marks generally associated with VW automobiles: (1) the letters VW; (2) the VW logo or emblem, the V over the W and encircled, the points of the letters touching the inside of the circle; (3) the full name "Volkswagen;" (4) the word "bug"; and (5) the bug silhouette of the classic sedan made by VWAG. These marks have been extensively used by Rickard in describing the type of work he does, the parts and accessories he sells, and the cars upon which he specializes.

VWAG alleged trademark and service mark infringement and unfair competition with respect to Rickard's use of the five marks described above. The first three, VW, Volkswagen, and the symbol,

are registered as trade and service marks under the Lanham Act, Title 15, U.S.C. Sec. 1051 et seq. The word "bug" and the bug silhouette are claimed by VWAG to be common law trade and service marks entitled to the same protection, and the district court so found. The registered marks include lettering in distinctive "Memphis Bold" type which style was also adopted by Rickard.

VWAG has invested considerable funds in promoting its ability to perform service and repair work on the cars it sells better than competitors are able to provide. Replacement parts and accessories are either manufactured by VWAG or purchased elsewhere, subjected to quality inspection and testing, then marketed under VWAG sponsorship. Mechanics are specially trained for VW work, and VWAG distributes manuals and service bulletins to its dealers for use in repair work. VWAG expends large sums of money in advertising the quality of its work and contends that Rickard's infringement does irreparable harm to the goodwill it has created in its service by advertising which utilizes the marks in question.

Authorized dealerships are free to use any and all of the five marks, and virtually all do. Some use the word "bug" in their franchise name, including at least one in Dallas, ("The Bug House") instead of the more traditional "Volkswagen". Many also have separate facilities for servicing of cars, distinct from the new car sales location. VWAG alleged that this, together with Rickard's extensive unauthorized use of the VWAG marks, unquestionably led to confusion amongst potential customers and hence unfair competition. The district court agreed and entered a detailed permanent injunction against Rickard, from which he appeals.[1]

1. Though lengthy, the entire injunctive decree is so germane to our disposition of this case that we quote its language fully, omitting only formal parts:

ORDERED, ADJUDGED, AND DECREED that the defendants, Edward T. Rickard and Bessie Rickard, each of them, and their respective agents, servants, employees, successors, and assigns, and all persons acting in concert with them or any of them, and each of them, are hereby permanently enjoined and restrained from continuing or resuming any of the following acts in connection with their business:

1. Using "The Bug Shop" as their trade name;

2. Using any reproduction or colorable imitation of or symbol similar to the Encircled "VW" Emblem, plaintiff's registered trademark and service mark composed of the letters "V" and "W" arranged vertically, the "V" on top of the "W" framed by and in contact with a circle;

3. Using the word "Volkswagen," the letters "VW," the word "Bug," or any other mark belonging to plaintiff, or any reproduction or colorable imitation of any of them (e. g., without limitation, "Volkswagen," "Volks," "Folks," "Vagen," "Wagon," "V," "W" and "Beetle"), as a part of any corporate or trade name or as an adjective to denote or describe their business, products sold by them, or services sold by them, except that defendants may use the word "Volkswagen," the letters "VW," or the word "Bug" as an adjective to refer to products originating with plaintiff, in order truthfully to advise prospective purchasers that defendants offer to service automobiles manufactured by plaintiff or offer for sale new or rebuilt parts and accessories therefor in factual phrases similar to "We Service Volkswagen Cars," "Parts for VW Autos," or "Rebuilt Parts for Bug Cars"; in any such factual phrase the following conditions must be adhered to:

(a) The word "Volkswagen," the letters "VW," or the word "Bug" must not be set out alone, but must be set forth on the same line as and be preceded by and followed by the other words in the factual phrase of which it forms a part and must appear in the same type, lettering, print, color, mounting, spacing, illumination, size, format, and material as those other words;

(b) "Memphis Bold" lettering must not be used;

(c) The color blue may not be used in connection with such phrase; and

(d) The use of plaintiff's marks must not be a dominant factor of defendants' advertising or signs on their premises;

4. Using any silhouette, picture, caricature, or reproduction of the shape or appearance of the Volkswagen sedan (here-

Rickard advances numerous claims of error below, which may be summarized as follows: (1) the trial court erroneously found that VWAG has a common law trademark and service mark in the word "bug" and is therefore entitled to injunctive protection of it, (2) the court erroneously held that the evidence supported a finding of intent to deceive by Rickard and that there was in fact deception of the public, (3) Rickard's use of any or all of the five marks did not constitute unfair competition as found by the trial court; and (4) the injunctive decree was unnecessarily overbroad.

## THE "BUG" MARK

■ The district court specifically found that "(p.)rior to defendant's commencement of business under the trade name 'The Bug Shop', 'Bug' had acquired a strong secondary meaning in the automotive field referring to plaintiff and the products and services marketed in the United States through the Volkswagen organization." App. at 15–16. The secondary meaning doctrine referred to by the court holds that words which have a primary meaning of their own, such as bug, may by long use in connection with a particular product, come to be known by the public as specifically designating that product. See generally 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 90, Doctrine of Secondary Meaning; 3 Callman, Unfair Competition, Trademarks, and Monopolies Sec. 77, Acquisition by Priority of Secondary Meaning. Thus in the judgment of the trial court, the word "bug" as used in the automotive field has become so associated with the Volkswagen that VWAG is entitled to trademark rights in the word.

■ The existence *vel non* of secondary meaning is an issue for the trier of

inafter referred to as a "silhouette"), except that defendants may use a silhouette as an adjective synonymous with the word "Volkswagen" to refer to products originating with plaintiff, in order truthfully to advise prospective purchasers that defendants offer to service automobiles manufactured by plaintiff or offer for sale new or rebuilt parts and accessories therefor in factual phrases similar to "We Service [silhouette] Cars," "Parts for [silhouette] Autos," or "Rebuilt Parts for [silhouette] Cars"; in any such use of a silhouette the following conditions must be adhered to:

(a) The silhouette must not be set out alone, but must be set forth on the same line as and be preceded and followed by words in the factual phrase of which it forms a part and must appear in the same color, mounting, spacing, illumination, size, format, and material as those words;

(b) "Memphis Bold" lettering must not be used for the words which precede and follow the silhouette in such a phrase;

(c) The color blue may not be used in connection with such phrase; and

(d) The use of the silhouette must not be a dominant factor of defendants' advertising or signs on their premises;

5. Using the word "Volkswagen," the letters "VW," the word "Bug," or any other mark belonging to plaintiff to describe any new or rebuilt automobile part or accessory, which did not originate with plaintiff, in phrases such as "Volkswagen Part," "VW Part," "Volkswagen Accessory," "VW Accessory," "Volkswagen Replacement Part," "VW Replacement Part," "Rebuilt Volkswagen Part," "Rebuilt VW Part," "Volkswagen Rebuilt Assembly," "VW Crankcase," and "VW Adaptors";

6. Making in any manner whatsoever any statement or representation or performing any act likely to lead the public or individual members of the public to believe that defendants are in any manner, directly or indirectly, associated or connected with, or licensed, authorized, franchised, sponsored, or approved by plaintiff or that their business forms part of the authorized Volkswagen organization; and

7. Committing any other act which infringes any of plaintiff's trademarks or service marks or amounts to an act of unfair competition.

It is further ORDERED, ADJUDGED, AND DECREED that, in accordance with 15 U.S.C. § 1116, defendants be and they hereby are required to file with the Court and to serve on plaintiff's counsel within ninety (90) days after service of this Final Judgment and Permanent Injunction a report in writing, under oath, setting forth in detail the manner and form in which defendants have complied with this Final Judgment and Permanent Injunction.

478

fact, here the trial court sitting without a jury. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 90, at 324; 3 Callman, Unfair Competition, Trademarks, and Monopolies at 358. Our review of this question is limited therefore by F.R.Civ.P. 52(a), and the trial court's judgment may be overturned only if "clearly erroneous." "(A) finding of fact is clearly erroneous if it is without substantial evidence to support it, or the district court misapprehended the effect of the evidence, or the reviewing court is left with the 'definite and firm conviction' that a mistake has been committed after inspecting the record as a whole." Lentz v. Metropolitan Life Ins. Co., 5 Cir. 1970, 428 F.2d 36, 39.

■■ The variables to be considered in determining whether or not a word has acquired a secondary meaning in a particular field are well recognized. "(I)t is appropriate to consider (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture." 3 Callman, Unfair Competition, Trademarks, Monopolies at 349. VWAG at trial introduced evidence of individual consumers who associate "bug" with the VW auto, of competitors who so associate it and customarily use it in their competitive advertising, and public opinion surveys showing substantial public association of the two. VWAG has also, as the exhibits reveal, employed the term "bug" in its own advertising for many years. The district court's judgment in this matter is not only not clearly erroneous, it is clearly correct.

## UNFAIR COMPETITION BY RICKARD

■■ In addition to trademark infringement, the district court found Rickard to have engaged in unfair competition, and grounded injunctive relief on these dual findings. Unfair competi-

tion being also a question of fact, 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 100, at 346, our review is again narrowly circumscribed by F.R.Civ.P. 52(a). Unfair competition is almost universally regarded as a question of whether the defendant is passing off his goods or services as those of the plaintiff by virtue of a substantial similarity between the two, leading to confusion on the part of potential customers. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 87 et seq., Unfair Competition. The only question to be resolved on appeal with respect to this issue is whether there is substantial evidence to support the finding of the trial court. Lentz v. Metropolitan Life Ins. Co., supra. Our disposition of this matter in appellee's favor renders unnecessary any discussion of Rickard's allegedly deceitful intent, as intent is not a necessary element of the tort of unfair competition. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 93, Fraudulent intent; 3 Callman, Unfair Competition, Trademarks, and Monopolies Sec. 86.-1(a), Intent of the Defendant (the Fraud Rule).

■■ Numerous facts in the record fully support the district court on this point. While a showing of likelihood of confusion is sufficient without proof of actual confusion, plaintiff in fact demonstrated that actual confusion existed on the part of some "Bug Shop" customers as to whether that establishment was an authorized franchisee. Also, Rickard used not only marks of a similar nature to those of VWAG, he also persistently used identical marks for the purpose of advertising his establishment. That advertising was done in precisely the same place and manner as that of authorized shops, and Rickard continued the use of VWAG marks for purposes of interior and exterior advertising of his place of business and the type of service offered. Since some authorized dealerships employ separate facilities for new car sales on the one hand and service work on the other, the absence of

a showroom or new car sales department did not distinguish Rickard's shop from those authorized dealers who so divide their operations. Finally, Rickard utilized not one, but five of VWAG's marks, the cumulative effect of which is greater likelihood of confusion.

Rickard would have us follow the rule of Volkswagenwerk Aktiengesellschaft v. Church, 9 Cir. 1969, 411 F.2d 350, and argues that to do so requires reversal of the district court. We disagree. In *Church* the district court had found that there was not a likelihood of confusion, based largely upon the fact that the defendant had cooperated with the plaintiff in modifying his use of VW and Volkswagen with use of the word "independent". Rickard has so modified his use only once on a single exterior sign at the original location. Rickard also uses three additional marks of VWAG, which defendant Church did not do. The Ninth Circuit holding was simply that the district court's factual findings were not clearly erroneous. This is the same result we reach in this case, though the two district courts, because of the distinguishing facts of the respective cases, reached opposing results. Cf. Volkswagenwerk Aktiengesellschaft v. Volks City, Inc., 3 Cir. 1965, 348 F.2d 659 (preliminary injunction upheld on basis of likelihood of confusion).

## THE INJUNCTIVE DECREE

Despite our complete agreement with the factual findings of the district court, we feel that the injunction entered is to a slight extent overbroad, and modify it accordingly.

■ Provision number two of the injunction (see note one, supra) covers use of the VW logo or symbol which has already been described. It is the only one of the five marks which Rickard has been completely enjoined from using, under any circumstances. However, this would prohibit him from using the original containers for selling and displaying parts and accessories which actually originated with VWAG or one of its suppliers. To this limited extent the injunction is overbroad, but in all further respects the emblem is entitled to trademark protection as directed by the injunctive decree.

The district court prescribed in detail the qualifications to govern Rickard's use of "Volkswagen," "VW", and "Bug" (provision three) and the silhouette (provision four) with identical limitations. They are specific, and we approve them in all but two minor aspects.

■ Provisions 3(a) and 4(a) both require that use of the VWAG marks must be set forth *on the same line* as both the advertising and qualifying language. This restriction seems to us to be unnecessarily burdensome. Many appropriate and harmless sentences descriptive of the services offered would simply be too long to be put in a single line using conventional advertising formats. Since use of a VWAG mark may not be a dominant factor of any advertising (provisions 3(d) and 4(d)), there should be no harm to the protected marks in allowing Rickard the use of more than one line in which to advertise.

■ Provisions 3(c) and 4(c) prohibit Rickard from advertising in the color blue, even though the use of any mark is properly qualified. Generally speaking, the protection of color as an element of a trademark is limited to instances in which it is impressed in a particular design or has acquired a secondary meaning of its own. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 47 Color; 3 Callman Unfair Competition, Trademarks, and Monopolies, Sec. 71.5 Color; cf. Life Savers Corp. v. Curtiss Candy Co., 7 Cir. 1950, 182 F.2d 4. We see nothing in the mere use of the color blue amounting to infringement or unfair competition by Rickard if it is used in a properly qualified fashion for advertising. Moreover, since the very qualification of a VWAG

mark and prohibition upon its being a dominant feature of any advertising guarantee that no confusion amongst potential customers is likely to occur, we think proscription against use of the color blue is unwarranted.

The district court is directed to modify its injunctive decree in the particulars noted. As so modified, its judgment is affirmed.