ZATARAINS, INC., Plaintiff-Appellant
Cross-Appellee,

v.

OAK GROVE SMOKEHOUSE, INC. and
Visko's Fish Fry, Inc., Defendants-Appellees Cross-Appellants.

No. 81–3573.

United States Court of Appeals,
Fifth Circuit.

Feb. 25, 1983.

Lemle, Kelleher, Kohlmeyer & Matthews, Wm. R. Forrester, Jr., New Orleans, La., for plaintiff-appellant cross-appellee.

Butler & Reynolds, Peter J. Butler, New Orleans, La., for Visko's Fish Fry, Inc.

E. Wade Shows, Baton Rouge, La., for Oak Grove Smokehouse.

Before GOLDBERG, GEE and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal of a trademark dispute presents us with a menu of edible delights sure to tempt connoisseurs of fish and fowl alike. At issue is the alleged infringement

of two trademarks, "Fish-Fri" and "Chick-Fri," held by appellant Zatarain's, Inc. ("Zatarain's"). The district court held that the alleged infringers had a "fair use" defense to any asserted infringement of the term "Fish-Fri" and that the registration of the term "Chick-Fri" should be cancelled. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

### A. THE TALE OF THE TOWN FRIER

Zatarain's is the manufacturer and distributor of a line of over one hundred food products. Two of these products, "Fish-Fri" and "Chick-Fri," are coatings or batter mixes used to fry foods. These marks serve as the entreè in the present litigation.

Zatarain's "Fish-Fri" consists of 100% corn flour and is used to fry fish and other seafood. "Fish-Fri" is packaged in rectangular cardboard boxes containing twelve or twenty-four ounces of coating mix. The legend "Wonderful FISH–FRI ® " is displayed prominently on the front panel, along with the block Z used to identify all Zatarain's products. The term "Fish-Fri" has been used by Zatarain's or its predecessor since 1950 and has been registered as a trademark since 1962.

Zatarain's "Chick-Fri" is a seasoned corn flour batter mix used for frying chicken and other foods. The "Chick-Fri" package, which is very similar to that used for "Fish-Fri," is a rectangular cardboard container labelled "Wonderful CHICK-FRI." Zatarain's began to use the term "Chick-Fri" in 1968 and registered the term as a trademark in 1976.

Zatarain's products are not alone in the marketplace. At least four other companies market coatings for fried foods that are denominated "fish fry" or "chicken fry." Two of these competing companies are the appellees here, and therein hangs this fish tale.

Appellee Oak Grove Smokehouse, Inc. ("Oak Grove") began marketing a "fish fry" and a "chicken fry" in March 1979. Both products are packaged in clear glassine packets that contain a quantity of coating mix sufficient to fry enough food for one meal. The packets are labelled with Oak Grove's name and emblem, along with the words "FISH FRY" OR "CHICKEN FRY." Oak Grove's "FISH FRY" has a corn flour base seasoned with various spices; Oak Grove's "CHICKEN FRY" is a seasoned coating with a wheat flour base.

Appellee Visko's Fish Fry, Inc. ("Visko's") entered the batter mix market in March 1980 with its "fish fry." Visko's product is packed in a cylindrical eighteen-ounce container with a resealable plastic lid. The words "Visko's FISH FRY" appear on the label along with a photograph of a platter of fried fish. Visko's coating mix contains corn flour and added spices.

Other food manufacturing concerns also market coating mixes. Boochelle's Spice Co. ("Boochelle's"), originally a defendant in this lawsuit, at one time manufactured a seasoned "FISH FRY" packaged in twelve-ounce vinyl plastic packets. Pursuant to a settlement between Boochelle's and Zatarain's, Boochelle's product is now labelled "FISH AND VEGETABLE FRY." Another batter mix, "YOGI Brand ® OYSTER SHRIMP and FISH FRY," is also available. Arnaud Coffee Corporation ("Arnaud") has manufactured and marketed "YOGI Brand" for ten to twenty years, but was never made a party to this litigation.[1] A product called "Golden Dipt Old South Fish Fry" has recently entered the market as well.

### B. OUT OF THE FRYING PAN, INTO THE FIRE

Zatarain's first claimed foul play in its original complaint filed against Oak Grove on June 19, 1979, in the United States District Court for the Eastern District of Louisiana. The complaint alleged trademark infringement and unfair competition under the Lanham Act §§ 32(1), 43(a), 15 U.S.C. §§ 1114(1), 1125(a) (1976), and La.Rev.Stat.

---

1. Prior to trial, Visko's moved to dismiss Zatarain's complaint for failure to join Arnaud as a party under Fed.R.Civ.P. 19(a). In the alternative, Visko's moved to join Arnaud as a third-party defendant under Fed.R.Civ.P. 14(a). The district court denied the motion.

Ann. § 51:1405(A) (West Supp.1982). Zatarain's later amended its complaint to add Boochelle's and Visko's as defendants. Boochelle's and Zatarain's ultimately resolved their dispute, and Boochelle's was dismissed from the suit. The remaining defendants, Oak Grove and Visko's, filed counterclaims against Zatarain's under the Sherman Act § 2, 15 U.S.C. § 2 (1976); the Clayton Act § 4, 15 U.S.C. § 15 (1976); La.Rev.Stat.Ann. § 51:1401 (West Supp. 1982); the Fair Packaging and Labeling Act, 15 U.S.C. §§ 1451–1461 (1976); and the Food, Drug, and Cosmetic Act § 403, 21 U.S.C. § 343 (1976). The defendants also counterclaimed for cancellation of the trademarks "Fish-Fri" and "Chick-Fri" under section 37 of the Lanham Act, 15 U.S.C. § 1119 (1976), and for damages under section 38 of the Lanham Act, 15 U.S.C. § 1120 (1976).

The case was tried to the court without a jury. Treating the trademark claims first, the district court classified the term "Fish-Fri" as a descriptive term identifying a function of the product being sold. The court found further that the term "Fish-Fri" had acquired a secondary meaning in the New Orleans geographical area and therefore was entitled to trademark protection, but concluded that the defendants were entitled to fair use of the term "fish fry" to describe characteristics of their goods. Accordingly, the court held that Oak Grove and Visko's had not infringed Zatarain's trademark "Fish-Fri."

With respect to the alleged infringement of the term "Chick-Fri," the court found that "Chick-Fri" was a descriptive term that had not acquired a secondary meaning in the minds of consumers. Consequently, the court held that Zatarain's claim for infringement of its trademark "Chick-Fri" failed and ordered that the trademark registration of "Chick-Fri" should be cancelled.

Turning to Zatarain's unfair competition claims, the court observed that the evidence showed no likelihood of or actual confusion on the part of the buying public. Additionally, the court noted that the dissimilarities in trade dress of Zatarain's, Oak Grove's, and Visko's products diminished any possibility of buyer confusion. For these reasons, the court found no violations of federal or state unfair competition laws.

Finally, the court addressed the counterclaims asserted by Oak Grove and Visko's. Because no evidence was introduced to support the defendants' allegations of monopolistic behavior, fraud, and bad faith on the part of Zatarain's, the court dismissed the federal and state antitrust and unfair trade practices counterclaims. The court also dismissed the counterclaim based on Zatarain's allegedly improper product identity labelling. Both sides now appeal to this court.

## II. ISSUES ON APPEAL

The district court found that Zatarain's trademark "Fish-Fri" was a descriptive term with an established secondary meaning, but held that Oak Grove and Visko's had a "fair use" defense to their asserted infringement of the mark. The court further found that Zatarain's trademark "Chick-Fri" was a descriptive term that lacked secondary meaning, and accordingly ordered the trademark registration cancelled. Additionally, the court concluded that Zatarain's had produced no evidence in support of its claims of unfair competition on the part of Oak Grove and Visko's. Finally, the court dismissed Oak Grove's and Visko's counterclaims for antitrust violations, unfair trade practices, misbranding of food products, and miscellaneous damages.

Battered, but not fried, Zatarain's appeals from the adverse judgment on several grounds. First, Zatarain's argues that its trademark "Fish-Fri" is a suggestive term and therefore not subject to the "fair use" defense. Second, Zatarain's asserts that even if the "fair use" defense is applicable in this case, appellees cannot invoke the doctrine because their use of Zatarain's trademarks is not a good faith attempt to describe their products. Third, Zatarain's urges that the district court erred in cancelling the trademark registration for the term "Chick-Fri" because Zatarain's presented sufficient evidence to establish a secondary meaning for the term. For these

reasons, Zatarain's argues that the district court should be reversed.

Oak Grove and Visko's also present an appeal to this court, contending that the district court erred in dismissing their counterclaims against Zatarain's. In particular, Oak Grove and Visko's again urge that Zatarain's conduct has violated the Sherman Act, the Lanham Act, the federal regulations governing product identity labelling, and Louisiana law prohibiting restraint of trade; Oak Grove and Visko's also pray for an award of attorneys' fees. We now turn to an appraisal of these issues.

## III. THE TRADEMARK CLAIMS

### A. BASIC PRINCIPLES [2]

#### 1. Classifications of Marks

■ The threshold issue in any action for trademark infringement is whether the word or phrase is initially registerable or protectable. *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir.1980); *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.,* 494 F.2d 3, 10 (5th Cir. 1974). Courts and commentators have traditionally divided potential trademarks into four categories. A potential trademark may be classified as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. These categories, like the tones in a spectrum, tend to blur at the edges and merge together. The labels are more advisory than definitional, more like guidelines than pigeonholes. Not surprisingly, they are somewhat difficult to articulate and to apply. *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir.1980); *Vision Center,* 596 F.2d at 115.

■ A *generic* term is "the name of a particular genus or class of which an individual article or service is but a member." *Vision Center,* 596 F.2d at 115; *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). A generic term

connotes the "basic nature of articles or services" rather than the more individualized characteristics of a particular product. *American Heritage,* 494 F.2d at 11. Generic terms can never attain trademark protection. *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 616, 68 L.Ed. 1161 (1924); *Soweco,* 617 F.2d at 1183; *Vision Center,* 596 F.2d at 115. Furthermore, if at any time a registered trademark becomes generic as to a particular product or service, the mark's registration is subject to cancellation. Lanham Act § 14, 15 U.S.C. § 1064(c) (1976). Such terms as aspirin and cellophane have been held generic and therefore unprotectable as trademarks. *See Bayer Co. v. United Drug Co.,* 272 F. 505 (S.D.N.Y.1921) (aspirin); *DuPont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (2d Cir.1936) (cellophane).

■ A *descriptive* term "identifies a characteristic or quality of an article or service," *Vision Center,* 596 F.2d at 115, such as its color, odor, function, dimensions, or ingredients. *American Heritage,* 494 F.2d at 11. Descriptive terms ordinarily are not protectable as trademarks, Lanham Act § 2(e)(1), 15 U.S.C. § 1052(e)(1) (1976); they may become valid marks, however, by acquiring a secondary meaning in the minds of the consuming public. *See id.* § 2(f), 15 U.S.C. § 1052(f). Examples of descriptive marks would include "Alo" with reference to products containing gel of the aloe vera plant, *Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845 (5th Cir.1970), and "Vision Center" in reference to a business offering optical goods and services, *Vision Center,* 596 F.2d at 117. As this court has often noted, the distinction between descriptive and generic terms is one of degree. *Soweco,* 617 F.2d at 1184; *Vision Center,* 596 F.2d at 115 n. 11 (citing 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 70.4 (3d ed. 1969)); *American Heritage,* 494 F.2d at 11. The distinction has important practical conse-

---

**2.** We are not the first to swim up this stream. For excellent discussions of the basics of trademark law, see *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178 (5th Cir.1980); *Vision Center v. Opticks, Inc.,* 596 F.2d 111 (5th Cir.1979); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976); *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

quences, however; while a descriptive term may be elevated to trademark status with proof of secondary meaning, a generic term may never achieve trademark protection. *Vision Center,* 596 F.2d at 115 n.11.

■ A *suggestive* term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services. *Soweco,* 617 F.2d at 1184; *Vision Center,* 596 F.2d at 115–16. A suggestive mark is protected without the necessity for proof of secondary meaning. The term "Coppertone" has been held suggestive in regard to sun tanning products. *See Douglas Laboratories, Inc. v. Copper Tan, Inc.,* 210 F.2d 453 (2d Cir.1954).

■ *Arbitrary* or *fanciful* terms bear no relationship to the products or services to which they are applied. Like suggestive terms, arbitrary and fanciful marks are protectable without proof of secondary meaning. The term "Kodak" is properly classified as a fanciful term for photographic supplies, *see Eastman Kodak Co. v. Weil,* 137 Misc. 506, 243 N.Y.S. 319 (1930) ("Kodak"); "Ivory" is an arbitrary term as applied to soap. *Abercrombie & Fitch,* 537 F.2d at 9 n.6.

### 2. Secondary Meaning

■ As noted earlier, descriptive terms are ordinarily not protectable as trademarks. They may be protected, however, if they have acquired a secondary meaning for the consuming public. The concept of secondary meaning recognizes that words with an ordinary and primary meaning of their own "may by long use with a particular product, come to be known by the public as specifically designating that product." *Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474, 477 (5th Cir.1974). In order to establish a secondary meaning for a term, a plaintiff "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59

S.Ct. 109, 113, 83 L.Ed. 73 (1938). The burden of proof to establish secondary meaning rests at all times with the plaintiff; this burden is not an easy one to satisfy, for " '[a] high degree of proof is necessary to establish secondary meaning for a descriptive term.' " *Vision Center,* 596 F.2d at 118 (quoting 3 R. Callman, *supra,* § 77.3, at 359). Proof of secondary meaning is an issue only with respect to descriptive marks; suggestive and arbitrary or fanciful marks are automatically protected upon registration, and generic terms are unprotectible even if they have acquired secondary meaning. *See Soweco,* 617 F.2d at 1185 n.20.

### 3. The "Fair Use" Defense

■ Even when a descriptive term has acquired a secondary meaning sufficient to warrant trademark protection, others may be entitled to use the mark without incurring liability for trademark infringement. When the allegedly infringing term is "used fairly and in good faith only to describe to users the goods or services of [a] party, or their geographic origin," Lanham Act § 33(b)(4), 15 U.S.C. § 1115(b)(4) (1976), a defendant in a trademark infringement action may assert the "fair use" defense. The defense is available only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than its trademark sense. *Soweco,* 617 F.2d at 1185; *see Venetianaire Corp. v. A & P Import Co.,* 429 F.2d 1079, 1081–82 (2d Cir. 1970). In essence, the fair use defense prevents a trademark registrant from appropriating a descriptive term for its own use to the exclusion of others, who may be prevented thereby from accurately describing their own goods. *Soweco,* 617 F.2d at 1185. The holder of a protectable descriptive mark has no legal claim to an exclusive right in the primary, descriptive meaning of the term; consequently, anyone is free to use the term in its primary, descriptive sense so long as such use does not lead to customer confusion as to the source of the goods or services. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 11.- 17, at 379 (1973).

### 4. Cancellation of Trademarks

Section 37 of the Lanham Act, 15 U.S.C. § 1119 (1976), provides as follows:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby.

This circuit has held that when a court determines that a mark is either a generic term or a descriptive term lacking secondary meaning, the purposes of the Lanham Act are well served by an order cancelling the mark's registration. *American Heritage,* 494 F.2d at 14.

We now turn to the facts of the instant case.

### B. "FISH–FRI"[3]

#### 1. Classification

Throughout this litigation, Zatarain's has maintained that the term "Fish-Fri" is a suggestive mark automatically protected from infringing uses by virtue of its registration in 1962. Oak Grove and Visko's assert that "fish fry" is a generic term identifying a class of foodstuffs used to fry fish; alternatively, Oak Grove and Visko's argue that "fish fry" is merely descriptive of the characteristics of the product. The district court found that "Fish-Fri" was a descriptive term identifying a function of the product being sold. Having reviewed this finding under the appropriate "clearly erroneous" standard, we affirm. *See Vision Center,* 596 F.2d at 113.

We are mindful that "[t]he concept of descriptiveness must be construed rather broadly." 3 R. Callman, *supra,* § 70.2. Whenever a word or phrase conveys an immediate idea of the qualities, characteristics, effect, purpose, or ingredients of a product or service, it is classified as descriptive and cannot be claimed as an exclusive trademark. *Id.* § 71.1; *see Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968). Courts and commentators have formulated a number of tests to be used in classifying a mark as descriptive.

A suitable starting place is the dictionary, for "[t]he dictionary definition of the word is an appropriate and relevant indication 'of the ordinary significance and meaning of words' to the public." *American Heritage,* 494 F.2d at 11 n.5; *see also Vision Center,* 596 F.2d at 116. *Webster's Third New International Dictionary* 858 (1966) lists the following definitions for the term "fish fry": "1. a picnic at which fish are caught, fried, and eaten; .... 2. fried fish." Thus, the basic dictionary definitions of the term refer to the preparation and consumption of fried fish. This is at least preliminary evidence that the term "Fish-Fri" is descriptive of Zatarain's product in the sense that the words naturally direct attention to the purpose or function of the product.

The "imagination test" is a second standard used by the courts to identify descriptive terms. This test seeks to measure the relationship between the actual words of the mark and the product to which they are applied. If a term "requires imagination, thought and perception to reach a conclusion as to the nature of goods," *Stix Products,* 295 F.Supp. at 488, it is considered a suggestive term. Alternatively, a term is descriptive if standing alone it conveys information as to the characteristics of the product. In this case, mere observation compels the conclusion that a product branded "Fish-Fri" is a prepackaged coating or batter mix applied to fish prior to cooking. The connection between this merchandise and its identifying terminology is so close and direct that even a consumer unfamiliar with the product would doubtless have an idea of its purpose or function.

---

**3.** We note at the outset that Zatarain's use of the phonetic equivalent of the words "fish fry"—that is, misspelling it—does not render the mark protectable. *Soweco,* 617 F.2d at 1186 n. 24.

It simply does not require an exercise of the imagination to deduce that "Fish-Fri" is used to fry fish. *See Vision Center,* 596 F.2d at 116–17; *Stix Products,* 295 F.Supp. at 487–88. Accordingly, the term "Fish-Fri" must be considered descriptive when examined under the "imagination test."

A third test used by courts and commentators to classify descriptive marks is "whether competitors would be likely to need the terms used in the trademark in describing their products." *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 379 (7th Cir.1976). A descriptive term generally relates so closely and directly to a product or service that other merchants marketing similar goods would find the term useful in identifying their own goods. *Vision Center,* 596 F.2d at 116–17; *Stix Products,* 295 F.Supp. at 488. Common sense indicates that in this case merchants other than Zatarain's might find the term "fish fry" useful in describing their own particular batter mixes. While Zatarain's has argued strenuously that Visko's and Oak Grove could have chosen from dozens of other possible terms in naming their coating mix, we find this position to be without merit. As this court has held, the fact that a term is not the only or even the most common name for a product is not determinative, for there is no legal foundation that a product can be described in only one fashion. *Vision Center,* 596 F.2d at 117 n.17. There are many edible fish in the sea, and as many ways to prepare them as there are varieties to be prepared. Even piscatorial gastronomes would agree, however, that frying is a form of preparation accepted virtually around the world, at restaurants starred and unstarred. The paucity of synonyms for the words "fish" and "fry" suggests that a merchant whose batter mix is

specially spiced for frying fish is likely to find "fish fry" a useful term for describing his product.

A final barometer of the descriptiveness of a particular term examines the extent to which a term actually has been used by others marketing a similar service or product. *Vision Center,* 596 F.2d at 117; *Shoe Corp. of America v. Juvenile Shoe Corp.,* 266 F.2d 793, 796 (C.C.P.A.1959). This final test is closely related to the question whether competitors are likely to find a mark useful in describing their products. As noted above, a number of companies other than Zatarain's have chosen the word combination "fish fry" to identify their batter mixes. Arnaud's product, "Oyster Shrimp and Fish Fry," has been in competition with Zatarain's "Fish-Fri" for some ten to twenty years. When companies from A to Z, from Arnaud to Zatarain's, select the same term to describe their similar products, the term in question is most likely a descriptive one.

The correct categorization of a given term is a factual issue, *Soweco,* 617 F.2d at 1183 n.12; consequently, we review the district court's findings under the "clearly erroneous" standard of Fed.R.Civ.P. 52. *See Vision Center,* 596 F.2d at 113; *Volks-wagenwerk,* 492 F.2d at 478. The district court in this case found that Zatarain's trademark "Fish-Fri" was descriptive of the function of the product being sold. Having applied the four prevailing tests of descriptiveness to the term "Fish-Fri," we are convinced that the district court's judgment in this matter is not only not clearly erroneous, but clearly correct.[4]

### 2. Secondary Meaning

Descriptive terms are not protectable by trademark absent a showing of secondary

---

4. Oak Grove and Visko's argue in a conclusory manner that the term "fish fry" is a generic name for the class of substances used to coat fish prior to frying. We are unable to agree. No evidence in the record indicates that the term "fish fry" is the common, recognized name for *any* class of foodstuffs. The district court specifically rejected the contention that the term "Fish-Fri" was generic. This finding was not clearly erroneous and must be affirmed.

Zatarain's urges that its "Fish-Fri" mark is suggestive rather than descriptive, and our lengthy discussion in text addresses this contention fully. We pause here, however, to speak to Zatarain's argument that certain survey evidence introduced at trial proves the suggestive nature of the term "Fish-Fri." Just as the compleat angler exaggerates his favorite fish story, so Zatarain's overstates the results of its consumer survey. We consider the sur-

meaning in the minds of the consuming public.[5] To prevail in its trademark infringement action, therefore, Zatarain's must prove that its mark "Fish-Fri" has acquired a secondary meaning and thus warrants trademark protection. The district court found that Zatarain's evidence established a secondary meaning for the term "Fish-Fri" in the New Orleans area. We affirm.

The existence of secondary meaning presents a question for the trier of fact, and a district court's finding on the issue will not be disturbed unless clearly erroneous. *American Heritage,* 494 F.2d at 13; *Volkswagenwerk,* 492 F.2d at 477. The burden of proof rests with the party seeking to establish legal protection for the mark—the plaintiff in an infringement suit. *Vision Center,* 596 F.2d at 118. The evidentiary burden necessary to establish secondary meaning for a descriptive term is substantial. *Id.; American Heritage,* 494 F.2d at 12; 3 R. Callman, *supra,* § 77.3, at 359.

---

vey unpersuasive on the issue of suggestiveness for several reasons.

First, the survey was not intended to investigate the term's descriptiveness or suggestiveness. Rather, as expert witness Allen Rosenzweig testified, the survey was designed to explore two completely different issues: likelihood of confusion in the marketplace and secondary meaning. Record on Appeal, Vol. II at 130, 173. Furthermore, the district court prohibited Rosenzweig's testimony as to whether the survey data showed Zatarain's term to be suggestive or descriptive. *Id.* at 149.

Second, a glance at the survey itself convinces us that, regardless of its purpose, the questions were not framed in a manner adequate to classify the mark properly. Respondents were asked the following questions: "2. If you planned to fry fish tonight, what would you buy at the grocery to use as a coating? 3. Are you familiar with any product on the market that is especially made for frying fish?" If these questions were to test the associational link between the mark "Fish-Fri" and Zatarain's product, they should have been devoid of such broad hints as the place of purchase ("grocery"), the nature of the product ("coating"), and the purpose or function of the product ("to fry fish"). Furthermore, we caution that survey samples such as these—100 women in each of four randomly selected cities—may not be adequate in size to prove much of anything. *Cf. Union Carbide Corp.,* 531 F.2d at 385–88 (citing cases); *American Thermos Products Co. v. Aladdin Industries, Inc.,* 207 F.Supp. 9, 20–22 (D.Conn.1962).

Survey evidence is often critically important in the field of trademark law. We heartily embrace its use, so long as the survey design is relevant to the legal issues, open-ended in its construction, and neutral in its administration. Given the admitted purposes of this survey and its obvious design limitations, it is rather disingenuous of Zatarain's to assert that the survey provided conclusive evidence of suggestiveness. We therefore reject Zatarain's contention in this regard.

Finally, Zatarain's urges that it is entitled to a legal presumption of suggestiveness by virtue of its federal registration of the term "Fish-Fri." The Lanham Act provides that:

[Registration] shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

Lanham Act § 33(a), 15 U.S.C. § 1115(a) (1976). *See also id.* § 7(b), 15 U.S.C. § 1057(b). This statutory presumption can be rebutted by establishing the generic or descriptive nature of the mark. *Vision Center,* 596 F.2d at 119; *Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774, 779 (2d Cir.1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

Zatarain's maintains that Oak Grove and Visko's failed to show that the term "Fish-Fri" is a descriptive one. We cannot agree. As our discussion in text indicates, ample evidence supports the appellees' contention that "Fish-Fri" is descriptive of a coating used to fry fish. This evidence is sufficient to rebut the presumption that the term is suggestive rather than descriptive. *See Vision Center,* 596 F.2d at 119–20.

5. A mark that has become "incontestable" under section 15 of the Lanham Act, 15 U.S.C. § 1065 (1976), cannot be challenged as lacking secondary meaning, although it is subject to seven statutory defenses. *See id.* § 33(b), 15 U.S.C. § 1115(b). In order for a registrant's mark to be deemed "incontestable," the registrant must use the mark for five continuous years following the registration date and must file certain affidavits with the Commissioner of Patents. *Id.* § 15, 15 U.S.C. § 1065. No evidence in the record indicates that Zatarain's has satisfied the requirements of "incontestability;" consequently, we must determine whether proof of secondary meaning otherwise exists.

In assessing a claim of secondary meaning, the major inquiry is the consumer's attitude toward the mark. The mark must denote to the consumer "a single thing coming from a single source," *Coca-Cola Co. v. Koke Co.*, 254 U.S. 143, 146, 41 S.Ct. 113, 114, 65 L.Ed. 189 (1920); *Aloe Creme Laboratories*, 423 F.2d at 849, to support a finding of secondary meaning. Both direct and circumstantial evidence may be relevant and persuasive on the issue.

Factors such as amount and manner of advertising, volume of sales, and length and manner of use may serve as circumstantial evidence relevant to the issue of secondary meaning. *See, e.g., Vision Center*, 596 F.2d at 119; *Union Carbide Corp.*, 531 F.2d at 380; *Aloe Creme Laboratories*, 423 F.2d at 849–50. While none of these factors alone will prove secondary meaning, in combination they may establish the necessary link in the minds of consumers between a product and its source. It must be remembered, however, that "the question is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of [the term] to the consuming public." *Aloe Creme Laboratories*, 423 F.2d at 850.

Since 1950, Zatarain's and its predecessor have continuously used the term "Fish-Fri" to identify this particular batter mix. Through the expenditure of over $400,000 for advertising during the period from 1976 through 1981, Zatarain's has promoted its name and its product to the buying public. Sales of twelve-ounce boxes of "Fish-Fri" increased from 37,265 cases in 1969 to 59,439 cases in 1979. From 1964 through 1979, Zatarain's sold a total of 916,385 cases of "Fish-Fri."[6] The district court considered this circumstantial evidence of secondary meaning to weigh heavily in Zatarain's favor. Record on Appeal, Vol. I at 273.

In addition to these circumstantial factors, Zatarain's introduced at trial two surveys conducted by its expert witness, Allen Rosenzweig.[7] In one survey, telephone interviewers questioned 100 women in the New Orleans area who fry fish or other seafood three or more times per month. Of the women surveyed, twenty-three percent specified *Zatarain's* "Fish-Fri" as a product they "would buy at the grocery to use as a coating" or a "product on the market that is especially made for frying fish." In a similar survey conducted in person at a New Orleans area mall, twenty-eight of the 100 respondents answered *"Zatarain's 'Fish-Fri' "* to the same questions.[8]

The authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning. *Vision Center*, 596 F.2d at 119; *Aloe Creme Laboratories*, 423 F.2d at 849; 1 J. McCarthy, *supra*, § 15.12(D). The district court believed that the survey evidence produced by Zatarain's, when coupled with the circumstantial evidence of advertising and usage, tipped the scales in favor of a finding of secondary meaning. Were we considering the question of secondary meaning *de novo*, we might reach a different conclusion than did the district court, for the issue is close. Mindful, however, that there is evidence in the record to support the finding below, we cannot say that the district court's conclusion was clearly erroneous. Accordingly, the finding of sec-

---

**6.** This figure represents the total sales volume for all sizes of "Fish-Fri."

**7.** *See supra* note 4. Visko's and Oak Grove argue that the survey evidence should not have been admitted at trial because it was hearsay. We find this argument to be without merit. *See Holiday Inns, Inc. v. Holiday Out in America,* 481 F.2d 445, 447–48 (5th Cir.1973); *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 680–684 & n.104 (S.D.N.Y.1963); Fed.R. Evid. 703 advisory committee note.

**8.** The telephone survey also included this question: "When you mentioned 'fish fry,' did you have a specific product in mind or did you use that term to mean any kind of coating used to fry fish?" To this inartfully worded question, 77% of the New Orleans respondents answered "specific product" and 23% answered "any kind of coating." Unfortunately, Rosenzweig did not ask the logical follow-up question that seemingly would have ended the inquiry conclusively: "Who makes the specific product you have in mind?" Had he but done so, our task would have been much simpler.

ondary meaning in the New Orleans area for Zatarain's descriptive term "Fish-Fri" must be affirmed.

### 3. The "Fair Use" Defense

Although Zatarain's term "Fish-Fri" has acquired a secondary meaning in the New Orleans geographical area, Zatarain's does not now prevail automatically on its trademark infringement claim, for it cannot prevent the fair use of the term by Oak Grove and Visko's. The "fair use" defense applies only to descriptive terms and requires that the term be "used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin." Lanham Act § 33(b), 15 U.S.C. § 1115(b)(4) (1976). The district court determined that Oak Grove and Visko's were entitled to fair use of the term "fish fry" to describe a characteristic of their goods; we affirm that conclusion.

Zatarain's term "Fish-Fri" is a descriptive term that has acquired a secondary meaning in the New Orleans area. Although the trademark is valid by virtue of having acquired a secondary meaning, only that penumbra or fringe of secondary meaning is given legal protection. Zatarain's has no legal claim to an exclusive right in the original, descriptive sense of the term; therefore, Oak Grove and Visko's are still free to use the words "fish fry" in their ordinary, descriptive sense, so long as such use will not tend to confuse customers as to the source of the goods. See 1 J. McCarthy, supra, § 11.17.

The record contains ample evidence to support the district court's determination that Oak Grove's and Visko's use of the words "fish fry" was fair and in good faith. Testimony at trial indicated that the appellees did not intend to use the term in a trademark sense and had never attempted to register the words as a trademark. Record on Appeal, Vol. II at 28, 33, 226–30, 243–47. Oak Grove and Visko's apparently believed "fish fry" was a generic name for the type of coating mix they manufactured. *Id.* at 28, 226, 244. In addition, Oak Grove and Visko's consciously packaged and labelled their products in such a way as to minimize any potential confusion in the minds of consumers. *Id.* at 244–45, 251–52. The dissimilar trade dress of these products prompted the district court to observe that confusion at the point of purchase—the grocery shelves—would be virtually impossible. Our review of the record convinces us that the district court's determinations are correct. We hold, therefore, that Oak Grove and Visko's are entitled to fair use of the term "fish fry" to describe their products; accordingly, Zatarain's claim of trademark infringement must fail.[9]

### C. "CHICK–FRI"

#### 1. Classification

■ Most of what has been said about "Fish-Fri" applies with equal force to Zatarain's other culinary concoction, "Chick-Fri." "Chick-Fri" is at least as descriptive of the act of frying chicken as "Fish-Fri" is descriptive of frying fish. It takes no effort of the imagination to associate the term "Chick-Fri" with Southern fried chicken. Other merchants are likely to want to use the words "chicken fry" to describe similar products, and others have in fact done so. Sufficient evidence exists to support the district court's finding that "Chick-Fri" is a descriptive term; accordingly, we affirm.

---

**9.** The district court also rejected Zatarain's claims of unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1976), and La.Rev.Stat.Ann. § 51:1405(A) (West Supp. 1982), relying upon the absence of any likelihood of confusion between the products of Zatarain's, Oak Grove, and Visko's. We affirm these conclusions also.

It would make no sense to characterize defendant's use as "fair" within the meaning of the Lanham Act for the purposes of a trademark infringement claim and at the same time characterize his use as "unfair" for the purpose of a section 43(a) unfair competition claim under the same statute. *Soweco,* 617 F.2d at 1190. *See T.G.I. Fridays, Inc. v. International Restaurant Group,* 569 F.2d 895 (5th Cir.1978).

### 2. Secondary Meaning

The district court concluded that Zatarain's had failed to establish a secondary meaning for the term "Chick-Fri." We affirm this finding. The mark "Chick-Fri" has been in use only since 1968; it was registered even more recently, in 1976. In sharp contrast to its promotions with regard to "Fish-Fri," Zatarain's advertising expenditures for "Chick-Fri" were mere chickenfeed; in fact, Zatarain's conducted no direct advertising campaign to publicize the product. Thus the circumstantial evidence presented in support of a secondary meaning for the term "Chick-Fri" was paltry.

Allen Rosenzweig's survey evidence regarding a secondary meaning for "Chick-Fri" also "lays an egg." The initial survey question was a "qualifier:" "Approximately how many times in an average month do you, yourself, fry *fish or other seafood?*" Only if respondents replied "three or more times a month" were they asked to continue the survey. This qualifier, which may have been perfectly adequate for purposes of the "Fish-Fri" questions, seems highly unlikely to provide an adequate sample of potential consumers of "Chick-Fri." This survey provides us with nothing more than some data regarding fish friers' perceptions about products used for frying chicken. As such, it is entitled to little evidentiary weight.[10]

It is well settled that Zatarain's, the original plaintiff in this trademark infringement action, has the burden of proof to establish secondary meaning for its term. *Vision Center,* 596 F.2d at 118; *American Heritage,* 494 F.2d at 12. This it has failed to do. The district court's finding that the term "Chick-Fri" lacks secondary meaning is affirmed.

### 3. Cancellation

Having concluded that the district court was correct in its determination that Zatarain's mark "Chick-Fri" is a descriptive term lacking in secondary meaning, we turn to the issue of cancellation. The district court, invoking the courts' power over trademark registration as provided by section 37 of the Lanham Act, 15 U.S.C. § 1119 (1976), ordered that the registration of the term "Chick-Fri" should be cancelled. The district court's action was perfectly appropriate in light of its findings that "Chick-Fri" is a descriptive term without secondary meaning. We affirm. *See American Heritage,* 494 F.2d at 13–14.

## IV. THE COUNTERCLAIMS

The last morsels on our plate are the counterclaims filed against Zatarain's by Oak Grove and Visko's. One group of counterclaims alleges violations of federal antitrust statutes and Louisiana law prohibiting the restraint of trade. In addition, the counterclaims pray for awards of attorneys' fees under the Lanham Act § 35, 15 U.S.C. § 1117 (1976), due to Zatarain's alleged bad faith in instituting this infringement action. The district court found these allegations to be clearly without merit, noting that Oak Grove and Visko's had introduced absolutely no evidence at trial to support the counterclaims. Our review of the record fully supports the district court's judgment in this regard, and it is hereby affirmed.

Finally, Oak Grove and Visko's assert a counterclaim based on the federal regulations governing the identity labelling of packaged foods, 21 C.F.R. § 101.3 (1982).[11] The counterclaim alleges that Za-

---

**10.** Even were we to accept the results of the survey as relevant, the result would not change. In the New Orleans area, only 11 of the 100 respondents in the telephone survey named "Chick-Fri," "chicken fry," or "Zatarain's 'Chick-Fri' " as a product used as a coating for frying chicken. Rosenzweig himself testified that this number was inconclusive for sampling purposes. Thus the survey evidence cannot be said to establish a secondary meaning for the term "Chick-Fri."

**11.** The regulation reads in pertinent part as follows:

(a) The principal display panel of a food in package form shall bear as one of its principal features a statement of the identity of the commodity.

(b) Such statement of identity shall be in terms of:

(1) The name now or hereafter specified in or required by any applicable Federal law or regulation; or, in the absence thereof,

tarain's sale of 100% corn flour under the name "Fish-Fri" is deceptive and misleading to the public. In particular, Oak Grove and Visko's maintain that the size of the product identification "corn flour" on the "Fish-Fri" box is not reasonably related to the most predominate words on the box as required by the regulations. After examining the "Fish-Fri" package, the district court found this counterclaim to be without merit. The court initially noted that the size of the words "corn flour" complies with the specifications of 21 C.F.R. § 101.2(c) (1982), which sets a minimum requirement for information appearing on the principal display panel of packaged foods. The court then found that the identification of Zatarain's "Fish-Fri" as a corn flour product was reasonably related in size to the words "Fish-Fri." This finding is not clearly erroneous and therefore is affirmed.

We agree with the district court that this smorgasbord of counterclaims by Oak Grove and Visko's is without merit, and we affirm their dismissal by the district court. Sadly, for Oak Grove and Visko's at least, these are "the ones that got away."

## V. CONCLUSION

And so our tale of fish and fowl draws to a close. We need not tarry long, for our taster's choice yields but one result, and we have other fish to fry. Accordingly, the judgment of the district court is hereby and in all things

AFFIRMED.

(2) The common or usual name of the food; or, in the absence thereof,

(3) An appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food.

    . . . .

(d) This statement of identity shall be presented in bold type on the principal display panel, shall be in a size reasonably related to the most prominent printed matter on such panel, and shall be in lines generally parallel to the base on which the package rests as it is designed to be displayed.