United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 18, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-60101

_____

BLENDCO, INC.,

Plaintiff-Appellant,
Cross-Appellee,

versus

CONAGRA FOODS, INC., ET AL.,

Defendants,

CONAGRA GROCERY PRODUCTS COMPANY,

Defendant-Appellee,
Cross-Appellant.

_____

Appeal from the United States District Court for
the Southern District of Mississippi
(USDC No. 2:02-CV-544-PG)

_____

Before REAVLEY, JONES and GARZA, Circuit Judges.

PER CURIAM:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We have reviewed Blendco's appeal and ConAgra's cross appeal, and affirm the judgment of the district court. We address below (in no order of importance) issues relating to liability and damages.

A.     <u>Liability</u>

We do not agree with ConAgra that it was entitled to judgment as a matter of law because Blendco's product, "Better-N-Butter," is descriptive. Blendco maintains that the jury properly found that its name was suggestive and therefore did not require proof of secondary meaning. The distinctiveness of a mark is a fact question for the trier of fact. <u>Pebble Beach Co. v. Tour 18 I Ltd.</u>, 155 F.3d 526, 537 (5th Cir. 1998). The jury did not clearly err in finding that Better-N-Butter was suggestive rather than descriptive. A mark is descriptive if it "identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions or ingredients." <u>Id.</u> at 540 (quoting <u>Zatarains, Inc. v. Oak Grove Smokehouse, Inc.</u>, 698 F.2d 786, 790 (5th Cir. 1983)).

In <u>Zatarains</u>, we held that a district court did not clearly err in finding that the "Fish-Fri" mark for a fish frying batter mix was not subject to trademark protection because it was descriptive. The court considered four tests. First was the "dictionary test," under which the dictionary definition is considered. <u>Id.</u> at 792. This test is inapplicable because "Better-N-Butter" is not a standard dictionary term. The second test is the "imagination test." Under this test, if the term "requires imagination, thought and perception to reach a conclusion as to the nature of the goods," it is considered suggestive. <u>Id.</u> (internal quotation marks omitted). Under this test, we found "Fish-Fri"

2

descriptive because "[t]he connection between this merchandise and its identifying terminology is so close and direct that even a consumer unfamiliar with the product would doubtless have an idea of its purpose or function." Id. Under the imagination test, we think "Better-N-Butter" might well mean to the average consumer that the product was some kind of butter substitute, which it is. However, we note that ConAgra's own expert found in a survey that only 22 percent of respondents, when asked what the words "Better 'N Butter" meant, gave answers indicating a butter substitute, and only one percent answered "oil based." Both products in issue are oil-based butter substitutes. Even when asked what the words "Better 'N Butter" on a bulk container or package of butter substitute product would "tell you about the product," only 33 percent of survey respondents answered "butter substitute."

The third test under Zatarains is "whether competitors would be likely to need the terms used in the trademark in describing their products." Id. at 793 (internal quotation marks omitted). Under this test, we found that a merchant who made a batter mix for frying fish would likely find "fish fry" a useful term, but in the pending case, a butter-flavored oil would not likely need or even find useful the exact term "Better-N-Butter" or a similar term in its name. "Liquid margarine," "buttery blend," "I can't believe it's not butter," or many other terms could be used. "Better" is a wholly unnecessary term for describing such a product. "Margarine" could be readily substituted for "butter" in the name for a butter flavored oil, and the record contains examples of competing products that use names such as Whirl, Phase, and Savory.

3

The fourth test is "the extent to which a term actually has been used by others marketing a similar service or product." Id. In Zatarain's, the evidence showed that "a number of companies other than Zatarian's have chosen the word combination 'fish fry' to identify their batter mixes." Id. In the pending case, there are only the two instances of Blendco and ConAgra using "better than butter" names for a nondairy butter-flavored oil. ConAgra points to evidence that another competitor, Sysco, stated in advertising that its product is "for those who know better than butter," but these words do not denote the actual name or brand of the Sysco product, Imperial Butter-It.

In short, the various Zatarains tests do not uniformly point to Blendco's mark as descriptive, and we cannot say that the jury clearly erred in finding that Blendco's "Better-N-Butter" name is suggestive rather than descriptive.

B.    Damages

Blendco complains that the district court erred in its measure of damages. The district court's discretion in fashioning monetary relief in trademark actions is unusually broad. Any award of profits is "subject to the principles of equity" under the Lanham Act. 15 U.S.C. § 1117(a). "An award of the defendant's profits is not automatic, and is committed to the discretion of the district court, whose decision we review for an abuse of discretion." Pebble Beach, 155 F.3d at 554 (citations omitted).

We cannot say that the district court reversibly erred in limiting damages to ConAgra's lost profits on sales to customers of both Blendco and ConAgra, given the factual circumstances of this case. The court allowed profits on sales of ConAgra's

4

Better 'N Butter to any ConAgra customer that had ever used Blendco products, irrespective of whether the customer was actually confused by the similar names. The willfulness of the infringement in an important factor in deciding whether lost profits are appropriately awarded but is not a prerequisite to such an award. Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 349 (5th Cir. 2002). We have also stated that

> relevant factors to the court's determination of whether an award of profits is appropriate include, but are not limited to, (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

Pebble Beach, 155 F.3d at 554.

The evidence showed that ConAgra performed a comprehensive federal and state trademark search and did not discover Blendco's Better-N-Butter product name. ConAgra independently created its Better 'N Butter name and was not aware of Blendco's product at the time. Blendco had not registered its trademark at the time ConAgra introduced its competing product. Although there was some evidence that Blendco lost sales of its product to the ConAgra product, there was no evidence that ConAgra chose its product name with the intent of deceiving customers into thinking that they were buying Blendco's product. Blendco presented no proof of its lost profits. ConAgra discovered the alleged infringement in 1999 but did not file suit until 2002. While Blendco advised ConAgra of its trademark claim when it discovered the use of ConAgra's similar name and product, ConAgra took the position, based on the view of

5

legal counsel, that neither product name was subject to protection because both names were merely descriptive, a colorable if ultimately unsuccessful defense. The district court granted injunctive relief to Blendco and there is no indication that ConAgra has violated or will violate that injunction.

Furthermore, Blendco's product was limited geographically to only seven states, while ConAgra had marketed its product nationwide and had much larger sales. Allowing damages measured by all of ConAgra's profits or sales would have granted a windfall to Blendco that we do not see as mandated by law or essential to principles of equity in these circumstances.

On the other hand, we do not agree with ConAgra's cross appeal that the modest award of $13,700 in money damages was unwarranted. ConAgra continued to use its nearly identical product and name after notice of infringement by Blendco. While ConAgra insists that it did not believe either its Better 'N Butter product name nor Blendco's Better-N-Butter product name were subject to trademark protection, this view of the law proved erroneous, and Blendco points out that ConAgra did affix a trademark notice to its Better 'N Butter name. The monetary award was within the district court's discretion.

Blendco argues that the limitation on damages imposed by the district court was improper because this limitation was not raised in ConAgra's answer or other pleadings or in the pretrial order. Blendco in effect argues that ConAgra was required, by the time of the pretrial order, to anticipate the district court's ultimate decision under equitable

principles to limit damages to ConAgra's profits on sales to common distributors. We do not hold a defendant to such clairvoyance. The district court's decision was not based on a recognized "common distributor" affirmative defense that ConAgra was required to plead in its answer or assert in the pretrial order. Nor do we think that the parties in these circumstances can limit the district court's statutory discretion to fashion an equitable remedy that consists of injunctive relief and limited money damages by what they include or fail to include in their joint pretrial order or earlier pleadings.

Blendo complains that the district court erred in allowing a ConAgra marketing manager, Frederick Wood, to testify that ConAgra's profit was $1.89 per case. We review a trial court's evidentiary rulings only for abuse of discretion. United States v. Clements, 73 F.3d 1330, 1334 (5th Cir. 1996). We have recognized that a corporate in-house lay witness can testify about lost profits if he has sufficient personal knowledge of the company's business operations. DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685-87 (5th Cir. 2003). ConAgra points to trial evidence, which we have reviewed, indicating that Wood was ConAgra's marketing manager for Better 'N Butter, and was knowledgeable of the Better 'N Butter product and its related internal financial information. Blendco was allowed to examine Wood at length regarding his basis for and confidence in the $1.89 figure and related financial information. We see no abuse of discretion.

AFFIRMED.